IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**August 12, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**MARGARET M.,**
**Respondent Below, Petitioner**

**v.) No. 23-ICA-576**    (Fam. Ct. Greenbrier Cnty. No. FC-13-2016-D-157)

**LARAMIE M.,**
**Petitioner Below, Respondent**

### MEMORANDUM DECISION

Petitioner Margaret M.[1] ("Mother") appeals the Family Court of Greenbrier County's order entered on November 28, 2023, denying, in part, her petition for modification of a permanent parenting plan. The child's father, Respondent Laramie M. ("Father"), and the child's guardian ad litem ("GAL"), responded in support of the family court's order.[2] Mother filed a reply. The issue on appeal is whether the family court sufficiently considered legal presumptions and burdens concerning a petition to modify a parenting plan affected by a limiting factor.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties married on January 31, 2015, and divorced by order entered on January 2, 2018. One child was born of the marriage. For almost five years, Mother was the primary residential parent and Father had parenting time three days per month. On March 13, 2018, Father filed a petition to modify custody premised on his belief that Mother was the source of two Child Protective Services ("CPS") referrals that alleged abuse of the child during Father's parenting time. The CPS referrals were found to be unsubstantiated, and the family court ultimately dismissed Father's petition for modification.

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Margaret M. is self-represented. Laramie M. is represented by Christine Stump, Esq. The child's GAL is Marie Bechtel, Esq.

On April 11, 2019, Father again filed a motion to modify custody seeking to decrease Mother's parenting time. Father alleged in his petition that Mother was instrumental in numerous additional unsubstantiated CPS referrals relating to him, his girlfriend, or his girlfriend's minor child. Over the course of several months, the family court conducted multiple hearings relating to CPS referrals and investigations regarding alleged abuse to the child by Father's girlfriend and the girlfriend's minor child, all of which were unsubstantiated. By final order entered November 1, 2019, the family court designated Father as the primary custodial parent and limited Mother's parenting time to specific weekends and holidays.

Mother appealed the November 1, 2019, order to the circuit court. The circuit court remanded the case with instructions for the family court to enter an order with sufficient findings of fact and conclusions of law. On February 2, 2021, the family court, on remand, entered another order, again limiting Mother's parenting time to designated weekends and holidays. This order was appealed to the circuit court, which summarily refused Mother's appeal. Mother appealed the circuit court's refusal to the Supreme Court of Appeals of West Virginia ("SCAWV"), which affirmed the family court, holding that Mother's involvement in unsubstantiated CPS allegations constituted a limiting factor that justified restricting Mother's parenting time. *See Margaret M. v. Laramie M.*, No. 21-0449, 2022 WL 1693669, at *6 (W. Va. May 26, 2022) (memorandum decision).

On April 5, 2021, Father filed an emergency *ex parte* motion to modify custody during the pendency of the SCAWV appeal. In his motion, Father stated that Mother caused at least fifteen allegations of either physical or sexual abuse to be reported to CPS concerning Father's parenting time. The most recent incident, which prompted Father to file the *ex parte* motion, occurred in late March of 2021, where Mother allegedly coached the child into telling her teacher that Father's girlfriend's five-year-old child touched her inappropriately. The teacher, a mandatory reporter, contacted CPS and it was later suspected by CPS that the child had been coached by Mother. The family court granted Father's motion, finding that "existing conditions will result in the child being subjected to continued mental harm and mental abuse." Father was granted sole exclusive temporary custody.[3]

On July 23, 2021, the family court entered a temporary order modifying the February 2, 2021, order (that was later affirmed by the West Virginia Supreme Court of Appeals), holding that Mother would have supervised parenting time and that both parties

---

[3] In its April 5, 2021, order, the family court scheduled a hearing on the issue for April 13, 2021. However, it is not apparent from the record that a hearing on that date took place.

would be required to submit to psychological exams.[4] Mother's parenting time was ordered to occur at the local visitation center, at times to be arranged by the visitation center.

On July 22, 2022, Mother filed a petition for modification seeking 50-50 parenting time. A hearing was held on Mother's petition on September 14, 2022. At that hearing, the GAL opined that visitations should progress into a more normalized environment but remain supervised due to Mother's history of repeated unsubstantiated allegations of abuse. Following this hearing, the family court entered another temporary modification order on October 3, 2022, wherein it found that Mother still did not understand how her behavior resulted in emotional abuse to the child. However, the family court modified Mother's parenting time as recommended by the GAL to Tuesday evenings from 5:00 to 7:00 at the local library and one Saturday per month from 10:00 a.m. to 1:00 p.m.

On February 8, 2023, Mother filed a motion for expansion of visitation parameters and status hearing. A hearing on her motion was held on May 25, 2023. The family court found that due to the limiting factors found, the statutory burden had shifted to Mother and required her to prove that the limiting factors have been negated or at least mitigated. At that hearing, the GAL recommended that Mother engage in cognitive behavioral therapy because Mother presented no evidence that she has mitigated or even understood that her behavior was harmful to the child. The family court adopted the GAL's recommendation and ordered Mother to attend cognitive behavioral therapy for two months. The family court further ordered Mother to provide a list of therapists covered by her insurance to the GAL and ordered the GAL to select one from the list and "communicate the issues of concern [. . .] to the therapist." These findings were reflected in another temporary modification order entered on August 4, 2023.

A final hearing was held on Mother's petition for modification on November 15, 2023. At that hearing, the visitation supervisor testified that visits had gone well, other than one incident when Mother became upset when she thought Father's significant other was picking the child up from visitation. Mother's therapist also testified that Mother's weekly sessions were going very well, that Mother was very cooperative, was easy to work with, and had not missed any sessions. Of concern to the family court was the fact that the therapist was unaware of any of the facts which caused Mother's parenting time to be limited and had not seen any of the family court's orders or CPS reports. The GAL recalled discussing with the therapist the purpose of Mother's therapy, but the therapist testified that the focus of their sessions was Mother and her coping skills with stressors and not the reasons why Mother would make multiple unsubstantiated CPS referrals. At the final hearing, the family court asked Mother why she was there, and she responded, "because I

---

[4] Upon review of the record, the hearing held on July 23, 2021, was the first hearing held following Father's emergency *ex parte* motion filed on April 5, 2021. The July 23, 2021, order notes that the hearing took place in response to motions filed by counsel and the GAL.

took my [child] to the doctor." The GAL expressed frustration with Mother's answer and did not recommend that Mother's parenting time be unsupervised but recommended that it be extended on the one Saturday per month from 10:00 a.m. to 6:00 p.m. and could take place at Mother's home but remain supervised. The family court adopted the GAL's recommendation by final order entered on November 28, 2023. It is from that order that Mother now appeals.

For these matters, we use the following standard of review:

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, __ W. Va. __, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Mother raises two assignments of error: (1) the family court erred by not applying West Virginia Code § 48-9-206 (2022) and (2) the family court erred by not including specific findings of fact and conclusions of law supporting its decision to depart from the equal custody presumption. In support of her first assignment of error, Mother asserts that the family court was required to apply the mandatory 50-50 presumption in West Virginia Code § 48-9-206 because it was in effect when the November 28, 2023, final order was entered. West Virginia Code § 48-9-206(a) was effective June 10, 2022. It reads as follows:

Unless otherwise resolved by agreement of the parents under §48-9-201 of this code or unless harmful to the child, the court shall allocate custodial responsibility so that, except to the extent required under §48-9-209 of this code, the custodial time the child spends with each parent shall be equal (50-50).

Mother is correct in her assertion that the family court must consider the 50-50 presumption in parenting plan orders (including modifications to prior permanent parenting plan orders) entered after June 10, 2022. *See* W. Va. Code § 48-9-603 (2022); *Jesse C. v. Veronica C.*, No. 23-ICA-169, 2024 WL 1590468, at * 3 (W. Va. Ct. App. Feb. 8, 2024) (memorandum decision) ("[A]ny best interest analysis conducted after June 10, 2022, the effective date of West Virginia Code § 48-9-102a [(2022)], is required to consider the 50-50 presumption.") However, we disagree that the family court erred in this particular case solely because the November 28, 2023, order did not specifically cite to the 50-50

4

presumption.[5] West Virginia Code § 48-9-209[(a)](5) (2022) states that a court shall consider whether a parent "has made one or more fraudulent reports of domestic violence or child abuse." The Code goes on to state that "[t]he parent found to have engaged in the behavior specified in subsection (a) of this section has the burden of proving that an allocation of custodial responsibility or decision-making responsibility to that parent will not endanger the child or the other parent." *See* W. Va. Code § 48-9-209(c).

Here, the family court found that considering the long procedural history of prior permanent parenting plans and modifications to the plans—including a modification based upon a limiting factor affirmed by the West Virginia Supreme Court of Appeals—Mother failed to meet her burden of proving that an additional allocation of custodial responsibility will not endanger the child as required by West Virginia Code § 48-9-209(c). The family court's order is not required to reflect a further 50-50 best-interest-of-the-child presumption analysis until Mother meets her burden of proving that she would no longer endanger the child or the other parent by causing false CPS allegations to be made. Although Mother has cooperated in counseling, the family court found that her own testimony at the final hearing (including her belief that her parenting time was limited "because [she] took [her] kids to the doctor") was sufficient evidence that Mother does not understand how her actions could be harmful to her child. Thus, we are unable to find that the family court clearly erred or abused its discretion in declining to further modify Mother's allocation of parenting time under the unique facts and procedural background of this case.

Accordingly, we affirm the Family Court of Greenbrier County's November 28, 2023, order.

Affirmed.

**ISSUED:** August 12, 2024

---

[5] To facilitate appellate review, it would be preferable in custodial allocation cases for family court orders to expressly acknowledge the general applicability of the 50-50 presumption and to include specific findings as to why the presumption is overcome by one or more applicable limiting factors. However, the unique procedural history and record in this case are sufficient to allow this Court to review the family court's reasoning through its various orders, including interim orders, together with the final order on appeal. While the final order is not a model of clarity or completeness, the family court effectively found that, in adopting a modification to the permanent parenting plan, the 50-50 presumption was rebutted by a preponderance of the evidence in light of a § 48-9-209 limiting factor, insofar as Mother failed to prove that the limiting factor had been sufficiently mitigated.

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge  Daniel W. Greear